UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | | | |
|---|---|---|---|
| DWAINE BARTLETT | ) | | |
| | ) | | |
| v. | ) | Cause No. | 1:14-CR-14-HAB |
| | ) | | 1:20-CV-175-HAB |
| UNITED STATES OF AMERICA | ) | | |

**ORDER AND OPINION**

Dwaine Bartlett received a 200-month sentence after pleading guilty to conspiring to possess with intent to distribute five kilograms or more of cocaine and possessing a firearm in furtherance of a drug trafficking crime. The charges stemmed from a plan to steal money and drugs from a drug dealer. However, there was no drug dealer, no money, and no drugs. Bartlett and his co-defendants were the target of a reverse sting operation designed by the ATF.

Bartlett is, quite understandably, displeased by the idea of spending more than fifteen years in prison for participating in the reverse sting. As such, he has filed a motion under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence. (ECF No. 553). The gist of the motion is Bartlett's claim that his trial counsel was ineffective for raising several defenses, all related to the imaginary nature of the robbery. In its response (ECF No. 566), the Government takes issue with the legal basis for Bartlett's motion and, on a more basic level, argues that Bartlett's counsel *did* raise all the issues contained in the instant motion, albeit not successfully. Having reviewed the record and the parties' filings, the Court agrees with the Government.

**A.    Factual and Procedural Background**

Bartlett raised no objections to the factual recitation in the final Presentence Investigation Report in his underlying prosecution (*see* ECF No. 465), so the Court will take all facts from that document. Bartlett's case arose out of an earlier investigation of heroin trafficking targeting Floyd

Thomas, Jr. Early in that investigation, Thomas expressed his interest in performing a robbery. A confidential informant ("CI") and an undercover task force officer ("UC") told Thomas that they knew of a potential target for Thomas and his crew to rob. In February 2014, the UC and a second undercover task force officer ("UC2") met with Thomas and three other men to plan the robbery. UC2 told the men that he expected between 15 to 20 kilograms of cocaine to be at the location when the robbery occurred. Thomas and his crew asked tactical questions and indicated that they were "ready for anything, including violence."

Bartlett attended the second planning meeting for the robbery, part of a five-person crew that joined Thomas. Bartlett had been recruited into the scheme by a third individual, Richard Council. UC and UC2 again explained the robbery, this time indicating that the location would have 20 kilograms of cocaine at the time of the robbery. Bartlett was an active participant at the meeting: he described how the men intended to sweep the house to locate all occupants, and further mentioned that the crew had police uniforms to create the element of surprise. Thomas and his crew left the meeting with the understanding that they would wait for further directions from UC2.

That same day, UC and UC2 met with Thomas and his crew and advised that the robbery was a go. The men left their location and traveled to a warehouse to prepare for the operation. As the men concluded their preparations, law enforcement descended upon the warehouse, arresting Thomas, Bartlett, and the other members of Thomas' crew. ATF special agents found multiple guns in the vehicles driven by Thomas' crew, and located the police uniforms mentioned by Bartlett at the earlier meeting.

During a subsequent interview with law enforcement, Bartlett admitted his role in the plan. He admitted coming to Fort Wayne to perform a robbery and stated that he expected about 20 kilograms of cocaine to be split amongst the participants. Bartlett planned to monetize his cut

through individuals he knew that could sell the cocaine. Bartlett told the officers that he and Council planned to act as lookouts while the rest of the men performed the robbery.

Robert W. Gevers, II, was appointed to represent Bartlett. In December 2016, Bartlett and his co-defendants filed a Motion for Evidentiary Hearing on the Issue of Selective Prosecution (ECF No. 200), alleging that the ATF improperly racially profiled them as part of its investigation. A joint reply in support of the Motion for Evidentiary Hearing was also filed. (ECF No. 205). This Court denied that Motion on February 14, 2017 (ECF No. 209), finding that Bartlett and his co-defendants had failed to make a showing of discriminatory intent in order to obtain even a hearing on their racial profiling allegations. (*Id*. at 5–6).

Following pleas by several of Bartlett's co-defendants, Thomas filed a number of *pro se* motions addressing the matters raised by Bartlett now. Thomas asked the Court to reconsider its order on the racial profiling allegations and also sought to suppress evidence based on alleged outrageous government conduct. (*See*, *generally*, ECF Nos. 317–18, 320, 336–37). This Court denied those motions. (ECF Nos. 347, 348). Thomas later filed a motion to dismiss the indictment based on entrapment (ECF No. 363), which was also denied by this Court. (ECF No. 373). To protect the record, Gevers filed a motion on Bartlett's behalf to adopt all the motions by his co-defendants, including Thomas' *pro se* motions. (ECF No. 383). The Court granted the motion "insofar as the pretrial motions of another defendant could apply to Defendant Bartlett." (ECF No. 402 at 1). The Court also confirmed that its rulings on the previous motions would stand. (*Id*.).

**B.     Legal Analysis**

A § 2255 motion must be granted when a defendant's "sentence was imposed in violation of the Constitution or laws of the United States." 28 U.S.C. § 2255. It is well-established, however, that a § 2255 motion is not a substitute for direct appeal. *See Barnickel v. United States*, 113 F.3d

704, 706 (7th Cir. 1997). Claims not raised on direct appeal are barred from collateral review unless upon review the petitioner establishes that a failure to consider the issue would amount to a fundamental miscarriage of justice. *See Prewitt v. United States*, 83 F.3d 812, 816 (7th Cir. 1996). Ineffective assistance of counsel claims will generally fit into this mold; they generally are not appropriate for review on direct appeal as they often attempt to rely on evidence outside the record. *See United States v. D'Iguillont*, 979 F.2d 612, 614 (7th Cir. 1992). Nonetheless, "[r]egardless of when it is made, because counsel is presumed effective, a party bears a heavy burden in making out a winning claim based on ineffective assistance of counsel." *United States v. Trevino*, 60 F.3d 333, 338 (7th Cir. 1995).

To make out a successful ineffective assistance of counsel claim, the petitioner must demonstrate that: (1) his counsel's performance fell below an objective standard of reasonableness; and (2) the deficient performance so prejudiced his defense that it deprived him of a fair trial. *See Strickland v. Washington*, 466 U.S. 668, 688-94 (1984).

> With regard to the performance prong, [the] defendant must direct us to the specific acts or omissions which form the basis of his claim. The court must then determine whether, in light of all the circumstances, the alleged acts or omissions were outside the wide range of professionally competent assistance.

*Trevino*, 60 F.3d at 338. Moreover, claims that an attorney was ineffective necessarily involve inquiries into an attorney's trial strategies, which in turn requires facts which usually are not contained in the trial record. As such, many trial determinations, like so many "other decisions that an attorney must make in the course of representation[, are] a matter of professional judgment." *United States v. Berkowitz*, 927 F.2d 1376, 1382 (7th Cir. 1991). Thus, the Court must resist a natural temptation to become a "Monday morning quarterback." *Harris v. Reed*, 894 F.2d 871, 877 (7th Cir. 1990).

> It is not our task to call the plays as we think they should have been called. On the contrary, we must seek to evaluate the conduct from counsel's perspective at the time, and must indulge a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance.

*United States v. Ashimi*, 932 F.2d 643, 648 (7th Cir.1991) (citations and quotations omitted).

Should the petitioner satisfy the performance prong, he must then fulfill the prejudice prong by demonstrating "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." *United States v. Starnes*, 14 F.3d 1207, 1209-10 (7th Cir. 1994). "In making the determination whether the specified errors resulted in the required prejudice, a court should presume ... that the judge or jury acted according to law." *Strickland*, 466 U.S. at 694. Further,

> [A] court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury. Some of the factual findings will have been unaffected by the errors, and factual findings that were affected will have been affected in different ways. Some errors will have had a pervasive effect on the inferences to be drawn from the evidence, altering the entire evidentiary picture, and some will have had an isolated, trivial effect. Moreover, a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support. Taking the unaffected findings as a given, and taking due account of the effect of the errors on the remaining findings, a court making the prejudice inquiry must ask if the defendant has met the burden of showing that the decision reached would reasonably likely have been different absent the errors.

*Id*. at 695-96.

Bartlett alleges that Gevers was ineffective for "[f]ailing to move for dismissal of Indictment due to Outrageous Government Conduct, Racial Profiling, and Entrapment." (ECF No. 553 at 4). The problem with Bartlett's argument is that these arguments were already made on Bartlett's behalf. Bartlett was a party to a motion asking for an evidentiary hearing on the racial profiling issue (ECF No. 200), and Gevers successfully joined in Thomas' motions regarding the alleged outrageous government conduct and entrapment issues. (ECF No. 383). True, the motions

5

were unsuccessful, but that does not change the fact that all issues Bartlett now raises were before the Court during Bartlett's underlying prosecution.

The fact that Bartlett's issues were already raised and rejected leads the Court to believe that, rather than an ineffective assistance of counsel claim, Bartlett is really seeking to attack the merits of this Court's prior rulings. There are any number of problems with Bartlett's strategy. First, the appeal deadlines on this Court's 2017 rulings have long since lapsed. *See* Fed. R. App. 4(a)(1)(B). Second, Bartlett waived his right to appeal his sentence or conviction on "any ground other than a claim of ineffective assistance of counsel." (ECF No. 447). Finally, since the propriety of this Court's rulings could have been raised on direct appeal, they are barred from collateral review. *Prewitt*, supra. No matter the title on the pleading, Bartlett is not entitled to challenge this Court's three-year-old rulings now.

Even if the Court could ignore the previous filings on Bartlett's behalf, it would still find that Bartlett cannot satisfy the prejudice prong of the *Strickland* analysis. The majority of Bartlett's brief in support of his § 2255 motion addresses his claim of "outrageous government conduct" and the Ninth Circuit's holding in *United States v. Black*, 733 F.3d 294 (9th Cir. 2013). But, as the Government points out, this Circuit does not follow *Black*. Quite to the contrary, "[o]utrageous government conduct is not a defense in this circuit." *United States v. Stallworth*, 656 F.3d 721, 730 (7th Cir. 2011). Therefore, even if the outrageous government conduct issue had not been raised on Bartlett's behalf, that failure could not be found to amount to constitutionally deficient performance.

Bartlett's racial profiling claim fares no better. A defendant asserting a claim of selective enforcement must establish that "a law or regulation was enforced against him, but not against similarly situated individuals of other races." *United States v. Barlow*, 310 F.3d 1007, 1010 (7th

6

Cir. 2002). That showing must be made by a clear evidence standard. *United States v. Brown*, 399 F.Supp.3d 976, 995–97 (N.D. Ill. 2018).

The evidence related to Bartlett's claim of racial profiling has already been analyzed by the Court and found wanting. Evaluating the evidence proffered by Bartlett and his co-defendants, this Court stated:

> The Defendants have not proffered adequate statistics to meet the discriminatory effect prong of their *Armstrong* motion. The statistical probabilities in Deng's affidavit are based on the general population of the Northern District of Indiana and do not factor in data to establish similarly situated persons, such as prior criminal history. *Barlow*, 310 F.3d at 1012. Furthermore, the list of 36 white defendants does not supply any meaningful information for how the individuals in the cases listed were similarly situated to black defendants charged in reverse sting operations. The only reason given for these cases being similarly situated is that these white males were convicted of drug crimes, weapons offenses, and violent crimes, including robberies, but none were targeted in reverse sting operations. Buttressing this point, the Defendants have received discovery regarding ATF's criteria for reverse sting operations in targeting only those individuals with a significant criminal history and predisposition for drug robberies. But the Defendants' list of cases does not factor in this procedure. Some of the cases the Defendants list do not involve a proactive investigation with an informant or undercover agent, which are necessary conditions for a reverse sting operation. Not all of the cases were ATF investigations.

(ECF No. 209 at 5). Bartlett does not address this finding in his § 2255 motion, and the Court finds no basis to believe that any other conclusion could be reached.

Finally, Bartlett believes that his indictment should have been dismissed due to entrapment. However, "[g]enerally speaking, entrapment is a question for the jury, not the court." *United States v. Mayfield*, 771 F.3d 417, 439 (7th Cir. 2014). As the Seventh Circuit has explained, "the subjective basis of the defense makes entrapment a fact question for the jury to decide as part of its function of determining the guilt or innocence of the accused." *Id*. (internal quotation omitted). When Bartlett pled guilty, he effectively withdrew entrapment from this case. The Court cannot find that a failure to raise entrapment at the indictment phase constitutes ineffective assistance.

In light of the foregoing, the Court concludes that Bartlett is not entitled to a hearing on his motion. A district court has discretion to "deny an evidentiary hearing where the motion, files, and records of the case conclusively show that the prisoner is entitled to no relief." *Koons v. United States*, 639 F.3d 348, 354–355 (7th Cir. 2011). As set forth above, the Court concludes that Bartlett's identified issues were raised on his behalf, and that they provide him with no relief in any event. No amount of hearing will change that analysis.

Finally, the Court will consider whether a certificate of appealability should issue. *See* Fed. R. App. 22(b)(1). No certificate of appealability may issue unless "the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). For the reasons set forth above, the Court finds that no such showing has been made. Therefore, the Court declines to issue a certificate of appealability here.

**C.     Conclusion**

For the foregoing reasons, Bartlett's § 2255 motion is DENIED and DISMISSED WITH PREJUDICE, and the Court DECLINES to issue a certificate of appealability.

SO ORDERED on August 11, 2020.

 s/ Holly A. Brady
JUDGE HOLLY A. BRADY
UNITED STATES DISTRICT COURT