UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | Cause No.    1:14-CR-14-HAB |
| ) | |
| DWAINE BARTLETT | |

**OPINION AND ORDER**

Dwaine Bartlett received a 200-month sentence after pleading guilty to conspiring to possess with intent to distribute five kilograms or more of cocaine and possessing a firearm in furtherance of a drug trafficking crime. The charges stemmed from a plan to steal money and drugs from a drug dealer. But there was no drug dealer, no money, and no drugs. Bartlett and his co-defendants were the target of a reverse sting operation designed by the ATF.

After Bartlett's challenge to his sentence under 28 U.S.C. § 2255 failed (*see* ECF No. 570), he moved for compassionate release. (ECF No. 657). After that motion was fully-briefed (ECF Nos. 661, 664), the Court stayed ruling pending the resolution by the Seventh Circuit of *United States v. Black*, No. 24-1191.[1] The Seventh Circuit issued its ruling in March, 131 F.4th 542 (7th Cir. 2025), and last week denied requests for rehearing and rehearing en banc. The matter is now ripe for ruling.

**I.    Factual Background**

Bartlett raised no objections to the factual recitation in the final Presentence Investigation Report in his underlying prosecution (*see* ECF No. 465), so the Court will take all facts from that document. Bartlett's case arose out of an earlier investigation of heroin trafficking targeting Floyd Thomas, Jr. Early in that investigation, Thomas expressed his interest in performing a robbery. A

---

[1] Bartlett has also moved to amend his motion for compassionate release to add additional argument related to the issues resolved in *Black*. The Court GRANTS that motion.

confidential informant ("CI") and an undercover task force officer ("UC") told Thomas that they knew of a potential target for Thomas and his crew to rob. In February 2014, the UC and a second undercover task force officer ("UC2") met with Thomas and three other men to plan the robbery. UC2 told the men that he expected between 15 and 20 kilograms of cocaine to be at the location when the robbery occurred. Thomas and his crew asked tactical questions and said that they were "ready for anything, including violence."

Bartlett attended the second planning meeting for the robbery, part of a five-person crew that joined Thomas. Bartlett had been recruited into the scheme by a third individual, Richard Council. UC and UC2 again explained the robbery, this time suggesting that the location would have 20 kilograms of cocaine at the time of the robbery. Bartlett was an active participant at the meeting: he described how the men intended to sweep the house to locate all occupants, and further mentioned that the crew had police uniforms to create the element of surprise. Thomas and his crew left the meeting with the understanding that they would wait for further directions from UC2.

That same day, UC and UC2 met with Thomas and his crew and advised that the robbery was a go. The men left their location and traveled to a warehouse to prepare for the operation. As the men concluded their preparations, law enforcement descended upon the warehouse, arresting Thomas, Bartlett, and the other members of Thomas' crew. ATF special agents found multiple guns in the vehicles driven by Thomas' crew, and located the police uniforms mentioned by Bartlett at the earlier meeting.

During a subsequent interview with law enforcement, Bartlett admitted his role in the plan. He admitted coming to Fort Wayne to perform a robbery and stated that he expected about 20 kilograms of cocaine to be split among the participants. Bartlett planned to monetize his cut

through individuals he knew that could sell the cocaine. Bartlett told the officers that he and Council planned to act as lookouts while the rest of the men performed the robbery.

Robert W. Gevers, II, was appointed to represent Bartlett. In December 2016, Bartlett and his co-defendants filed a Motion for Evidentiary Hearing on the Issue of Selective Prosecution (ECF No. 200), alleging that the ATF improperly racially profiled them as part of its investigation. A joint reply in support of the Motion for Evidentiary Hearing was also filed. (ECF No. 205). This Court denied that Motion on February 14, 2017 (ECF No. 209), finding that Bartlett and his co-defendants had failed to make a showing of discriminatory intent in order to obtain even a hearing on their racial profiling allegations. (*Id*. at 5–6).

Following pleas by several of Bartlett's co-defendants, Thomas filed several *pro se* motions. Thomas asked the Court to reconsider its order on the racial profiling allegations and sought to suppress evidence based on alleged outrageous government conduct. (*See*, *generally*, ECF Nos. 317–18, 320, 336–37). This Court denied those motions. (ECF Nos. 347, 348). Thomas later moved to dismiss the indictment based on entrapment (ECF No. 363), which was also denied by this Court. (ECF No. 373). To protect the record, Gevers filed a motion on Bartlett's behalf to adopt all the motions by his co-defendants, including Thomas' *pro se* motions. (ECF No. 383). The Court granted the motion "insofar as the pretrial motions of another defendant could apply to Defendant Bartlett." (ECF No. 402 at 1). The Court also confirmed that its rulings on the previous motions would stand. (*Id*.).

## II.   Legal Analysis

Generally, a court is statutorily prohibited from modifying a term of imprisonment once imposed. *See* 18 U.S.C. § 3582(c). A handful of statutory exceptions exist, however, one of which allows a court to grant an inmate compassionate release if the inmate meets certain requirements.

*See* 18 U.S.C. § 3582(c)(1)(A). Under this provision, a court may not modify a term of imprisonment except that –

(1) in any case --

(A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier . . . after considering the factors set forth in section 3553(a) to the extent that they are applicable, . . . finds that—

(i) extraordinary and compelling reasons warrant such a reduction …

… and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]

18 U.S.C. § 3582(c)(1)(A)(i).

Because Defendant, not the Director of the BOP, filed the motion, Defendant must first show that he has satisfied the statutory exhaustion requirement. The Government does not argue that Defendant has failed to properly exhaust his remedies.

Congress did not define "extraordinary and compelling reasons" in the statute, instead delegating the matter to the Sentencing Commission to promulgate a policy statement that "describe[s] what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples." 28 U.S.C. § 994(t). The policy statement, contained in United States Sentencing Guidelines ("U.S.S.G.") § 1B1.13 and its Application Notes, in line with the statutory directive in § 3582(c)(1)(A), requires a court to make several findings.

First, the court must address whether "[e]xtraordinary and compelling reasons warrant the reduction" and whether the reduction is otherwise "consistent with this policy statement." U.S.S.G. § 1B1.13(1)(A), (3). To this end, a court is to consider the medical condition of the defendant, his age, his family circumstances, and whether there is in the defendant's case an extraordinary or

compelling reason "other than or in combination with" the other reasons described in the Application Notes. Second, the Court must determine whether Defendant is "a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(2). Finally, the Court must consider the § 3553(a) factors, "to the extent they are applicable." U.S.S.G. § 1B1.13.

**A.      *Bartlett's Mother's Health is not an Extraordinary or Compelling Reason***

Bartlett's first stated ground for release is the health of his mother. Attaching a five-page "After Visit Summary" from November 2023, Bartlett argues that his mother's health has gotten "considerably worse" so much that she is prescribed Oxycodone to deal with pain. Bartlett further argues that he is the only person who can care for his mother, as his two siblings live more than a half-hour away and have jobs.

Under U.S.S.G. § 1B1.13(b)(3)(C), family circumstances can constitute extraordinary and compelling circumstances in the event of "the incapacitation of the defendant's parent when the defendant would be the only available caregiver." The Government argues that Bartlett has failed to demonstrate either prong—it claims that he has not shown that his mother is "incapacitated" or that he is the only available caregiver. The Court agrees with the Government on both counts.

Incapacitation first. The Guidelines provide no definition for incapacitation, so the Court will look to state probate law. *See United States v. Taveras*, 731 F. Supp. 3d 94, 99-100 (D. Mass. 2024). Indiana statute defines an "incapacitated person" as one who:

(2) is unable:

    (A) to manage in whole or in part the individual's property;

    (B) to provide self-care; or

    (C) both;

5

> because of insanity, mental illness, mental deficiency, physical illness, infirmity, habitual drunkenness, excessive use of drugs, incarceration, confinement, detention, duress, fraud, undue influence of others on the individual, or other incapacity.

Ind. Code § 29-3-1-7.5(2).

The Court does not doubt that Bartlett's mother is in poor health. The provided medical record contains a laundry list of medical conditions and an even longer list of prescribed medications. But nothing in Bartlett's motion suggests, much less demonstrates, that she cannot manage her property or provide self-care. To the contrary, it appears that she is doing just that as Bartlett's motion notes that she "lives alone." (ECF No. 657 at 6). The Court is sympathetic to the ailments of Bartlett's mother but finds that she is not incapacitated for the purposes of § 1B1.13(b)(3)(C). *See United States v. Ingram*, No. 2:14-CR-40, 2019 WL 3162305, at *2 (S.D. Ohio July 16, 2019) (holding that "[m]any, if not all inmates, have aging and sick parents," and "[s]uch circumstance is not extraordinary.").

Nor does the Court find that Bartlett is the only available caregiver. The Court has little doubt that caring for Bartlett's mother would be an inconvenience for his siblings. Both are employed full-time and live a significant commute from their mother. Both would have to make significant life changes to assume the role of primary caretaker to their mother. But that doesn't mean they are unavailable, or that their inconvenience should weigh more heavily than society's interest in seeing that Bartlett serves out his agreed-upon sentence. Because the Guideline requires that Bartlett be the only, rather than the most convenient, available caretaker, he fails to meet its requirements.

In short, Bartlett finds himself in the same boat as many inmates. As he ages, so does his mother. And with age comes declining health. But more is required. Because Bartlett has not

6

shown that his mother is incapacitated, or that he is the only available caregiver, his mother's health is not an extraordinary or compelling reason for release.

B. *Bartlett's "Unusually Long Sentence" cannot be an Extraordinary or Compelling Reason*

The health of Bartlett's mother was just the appetizer. The main course of his motion is his claim, under § 1B1.13(b)(6), that his "unusually long sentence" and the change in DOJ policy on reverse stings constitutes a basis for compassionate release. But even if the Court agreed, the Seventh Circuit doesn't, so his argument is a non-starter.

The relevant portion of the Guideline provides:

> If a defendant received an unusually long sentence and has served at least 10 years of the term of imprisonment, a change in the law (other than an amendment to the Guidelines Manual that has not been made retroactive) may be considered in determining whether the defendant presents an extraordinary and compelling reason, but only where such change would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed, and after full consideration of the defendant's individualized circumstances.

U.S.S.G. § 1B1.13(b)(6).

Assuming, without finding, that the abandonment of reverse stings by the ATF constitutes a "change in the law," *United States v. Rivero*, --- F. Supp. 3d ---, 2024 WL 5195294, at *1 (S.D. Fla. Dec. 20, 2024), subsection (b)(6) is invalid in this Circuit under *United States v. Thacker*, 4 F.4th 569 (7th Cir. 2021). *See Black*, 131 F.4th at 546. *Black*, following the holding of *Thacker*, conclusively determined that changes in the law "cannot serve as a basis for a defendant's eligibility [for compassionate release] by itself or in combination with other factors." *Id*. at 548. Until the Supreme Court declares otherwise, Bartlett's argument must fail.

C. *The Court has Addressed, and Rejected, Bartlett's COVID-19 Arguments*

Bartlett next includes a grab-bag of "other reasons," all having to do with FCI Pekin's response to the COVID-19 pandemic. He argues that the response resulted in "harsh prison

7

conditions" and that FCI Pekin failed to follow CDC and BOP guidelines for addressing the pandemic.

This is not the first time he has advanced these arguments. In his first request for compassionate release, Bartlett argued the same points. (*See* ECF No. 633 at 7-18, 22-24). This Court rejected the arguments then. Relying on *United States v. Broadfield*, 5 F.4th 801 (7th Cir. 2021), the Court stated,

> Vaccination is available to Defendant: as of today, 1318 inmates at FCI Pekin have been fully vaccinated. Indeed, Defendant has been vaccinated. (ECF No. 633 at 21). Defendant has submitted nothing to show that he is medically unable to benefit from the vaccine. COVID-19, then, cannot provide Defendant with the relief he seeks. This is true whether Defendant characterizes the argument as simply COVID-19, the BOP's pandemic plan, the BOP's inadequate medical care, or reference to various public statements or executive orders.

(ECF No. 648 at 7). This logic is even more true now, as COVID fades further into the nation's rearview mirror. Bartlett's COVID-19-related arguments fail.

**D.**     ***Bartlett's Rehabilitation Efforts are not Extraordinary or Compelling Reasons***

Bartlett next highlights his efforts at rehabilitation. He has attached his BOP PATTERN risk assessment form, which shows that he has completed five courses while incarcerated. These efforts will serve Bartlett well on release, and the Court congratulates him for an effective use of his time.

But even after the amendments to the Guidelines, "rehabilitation of the defendant is not, by itself, an extraordinary and compelling reason." U.S.S.G. § 1B1.13(d). Consistent with the Guidelines, the Court rejects Bartlett's argument that his rehabilitation is an extraordinary or compelling reason for release.

**E.**     ***Bartlett's Grounds, Considered Together, are not Extraordinary or Compelling***

As discussed above, none of Bartlett's circumstances are extraordinary or compelling on their own. The Court has considered the reasons together and finds them no more worthy of compassionate release. *United States v. Newton*, 996 F.3d 485, 489 (7th Cir. 2021) (finding that proposed extraordinary and compelling reasons must be considered cumulatively). Unlike comorbidities, Bartlett's proposed reasons do not interact in a synergistic fashion where the whole is greater than the sum of its parts. Instead, the reasons are separate, with none particularly close to meeting the statutory requirements. The Court finds no extraordinary or compelling circumstances supporting release so Bartlett's motion must be denied. [2]

**III.    Conclusion**

For these reasons, Defendant's motion to amend his compassionate release motion (ECF No. 659) is GRANTED. His motion for compassionate release (ECF No. 657) is DENIED.

SO ORDERED on May 1, 2025.

s/ *Holly A. Brady*
JUDGE HOLLY A. BRADY
UNITED STATES DISTRICT COURT

---

[2] Finding no extraordinary or compelling reasons for release, the Court need not consider the § 3553(a) factors. *United States v. Ugbah*, 4 F.4th 595, 598 (7th Cir. 2021).